IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>U.S. Department of Justice<br>Environment and Natural<br>  Resources Division<br>10th & Pennsylvania Ave., N.W.<br>Washington, D.C. 20530<br><br>      Plaintiff,<br><br>      v.<br><br>DAIMLERCHRYSLER AG<br>RP<br>HPC X 408<br>Calwer Strasse<br>71059 Sindelfingen<br>Germany<br><br>MERCEDES-BENZ USA, LLC<br>50 Craig Road<br>Montvale, NJ 07645<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## NATURE OF ACTION

1.    This is a civil action brought pursuant to Sections 204 and 205 of the Clean Air Act ("Act"), 42 U.S.C. §§ 7523 and 7524, for injunctive relief and the assessment of civil penalties against defendants DaimlerChrysler AG and Mercedes-Benz USA, LLC (collectively the "Defendants") for violations of the Act and regulations promulgated thereunder.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to Sections 204 and 205 of the Act, 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355. This Court also has in personam jurisdiction over the Defendants and/or Defendants have consented to in personam jurisdiction for the purposes of this action.

3.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b) and Section 205 of the Act, 42 U.S.C. §7524, because Defendants are subject to personal jurisdiction in this district and/or Defendants have consented to in personam jurisdiction for purposes of this action and because the Administrator of EPA has his principal place of business in this district.

## DEFENDANTS

4.    DaimlerChrysler AG, a corporation formed under the laws of Germany, is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e), and is a "manufacturer" within the meaning of Section 216(1) of the Act, 42 U.S.C. § 7550(1).

5.    Mercedes-Benz USA, LLC, a corporation incorporated under the laws of Delaware, is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. §7602(e), and is a "manufacturer" within the meaning of Section 216(l) of the Act, 42 U.S.C. § 7550(1).

6.    At all times relevant to this action, Defendants were engaged in the business of manufacturing new motor vehicles to be sold in the United States and/or in the importation/distribution of such vehicles in the United States.

## STATUTORY AND REGULATORY BACKGROUND

7.     This action arises under Title II of the Act, 42 U.S.C. § 7521 et seq., and the regulations promulgated thereunder, relating to the requirement that a manufacturer report emission-related defects in its vehicles to EPA.

### Reporting Obligations

8.     Section 203(a)(2)(A) of the Act, 42 U.S.C. § 7522(a)(2)(A), prohibits any person from failing or refusing to make reports or provide information to EPA as required by Section 208 of the Act, 42 U.S.C. § 7542.

9.     Section 208(a) of the Act, 42 U.S.C. § 7542(a), requires every manufacturer of new motor vehicles to establish and maintain records, perform testing, make reports, and provide information as EPA may reasonably require to determine whether the manufacturer has acted or is acting in compliance with Part A of Title II of the Act.

10.     EPA has promulgated regulations requiring manufacturers to report to EPA emission-related defects in motor vehicles.   40 C.F.R. § 85.1903(b) requires a manufacturer of motor vehicles to file an emissions defect information report ("EDIR") with EPA within 15 working days after the manufacturer determines: (a) in accordance with the procedures established by the manufacturer to identify safety related defects pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 et seq., that a specific emission-related defect exists; and (b) that the specific emission-related defect exists in twenty-five or more vehicles or engines of the same model year.

11.     An "emission-related defect" is defined by 40 C.F.R. § 85.1902(b) as "a defect in design, materials, or workmanship in a device, system, or assembly described in the approved

-3-

Application for Certification (required by 40 CFR. 86.1843-01 and 86.1844-01, 40 CFR 86.098-22 and like provisions of subpart A [of 40 CFR Part 85] and 40 CFR Part 86) which affects any parameter or specification enumerated in Appendix VIII [of 40 C.F.R. Part 85]." Manufacturers submit an Application for Certification to EPA to obtain a "Certificate of Conformity" pursuant to Section 206(a)(1) of the Act, 42 U.S.C. § 206(a)(1), allowing the sale in the United States of motor vehicles or motor-vehicle engines covered by the Certificate. Appendix VIII of 40 C.F.R. Part 85 sets forth various parameters and specifications that can impact on the emission of air pollutants from motor vehicles.

12.      Pursuant to 40 C.F.R. § 85.1901, the obligation to file an EDIR affecting a given class or category of vehicles remains applicable for five years from the end of the model year in which the vehicles were manufactured. Pursuant to 40 C.F.R. § 1904(b), items of information required to be included in an EDIR that are either not available at the time of filing or are significantly revised shall be submitted as they become available.

## GENERAL ALLEGATIONS

### Mass Airflow Sensor Defect

13.      The mass air flow sensor ("MAF") is a device that is used to determine the amount of air flowing into the engine.

14.      The MAF in certain model year 1998 - 2000 Mercedes-Benz vehicles may become contaminated over time, which can cause a deviation in the MAF signal. The MAF contains an electrical circuit embedded in a protective silicon gel. Hydrocarbon residuals from the combustion process entering the MAF air-duct housing can cause the release of substances from the silicon gel, which in turn can contaminate the internal temperature sensors and the

-4-

heating element of the MAF. Contamination of the MAF can cause sensor signal deviation, especially at idle or low engine load.

15.    This potential problem with the MAF in certain model year 1998 - 2000 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

16.    Approximately 666,000 Mercedes-Benz vehicles have the potential to develop this MAF problem.

17.    Defendants submitted an EDIR with respect to this emission-related defect on July 27, 2004.

18.    As a result of information available to Defendants concerning this emission-related defect, Defendants determined, or should have determined, that this emission-related defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to July 27, 2004. Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

**Underfloor Catalytic Converter Defect**

19.    The catalytic converter ("catalyst") is a device installed in the exhaust system of an internal combustion engine that controls emissions. Typically, the catalyst consists of a metallic can or shell containing a ceramic honeycomb or "brick" coated with precious metals that store or release nitrogen or oxygen atoms, causing reactions that reduce emissions of pollutants including hydrocarbons, carbon monoxide, and oxides of nitrogen. The brick is held in place inside the can by a mat intended to protect the brick from movement and friction during vehicle

-5-

operations. Vehicles sold by Defendants have both primary underhood catalysts and secondary underfloor catalysts. The exhaust first passes through the primary under-hood catalyst, which is located nearer the engine, and then through the secondary under-floor catalyst.

20.    The ceramic monolith substrate in the secondary under-floor catalyst of certain model year 1998 - 2003 Mercedes-Benz vehicles with M112 or M113 engines may be damaged under certain circumstances, which can result in a reduction in the efficiency of the secondary portion of the catalyst system. Secondary under-floor catalysts are exposed to lower exhaust gas temperatures than the primary under-hood catalysts because they are located further downstream from the exhaust manifold. Under certain driving conditions, the secondary catalysts in these vehicles may not experience sufficient initial thermal mat expansion during vehicle break-in to adequately fix the monolith in place within the under-floor can. This rattling can reduce the durability of the under-floor catalyst.

21.    This potential problem with the under-floor catalyst in certain 1998 - 2003 model year Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

22.    Approximately 404,000 Mercedes-Benz vehicles have the potential to develop this under-floor catalyst problem.

23.    Defendants submitted an EDIR with respect to this emission-related defect on July 27, 2004.

24.    As a result of information available to Defendants concerning this emissions-related defect, Defendants determined, or should have determined, that this emission-related

-6-

defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to July 27, 2004. Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

### Fuel Filler Cap Defect

25.     The fuel filler cap seals the gas tank, preventing gasoline evaporation from the fuel tank and also providing the proper seal of the entire fuel system.

26.     The fuel filler cap on certain model year 1998 - 2003 Mercedes-Benz vehicles may experience slippage before the end of the vehicles' useful life. On the affected vehicles, the fuel filler cap is a multi-part assembly which includes a cap knob that is designed to rotate independently of the sealing portion of the cap. The cap knob transmits the appropriate torque to the sealing portion of the cap through a slip ring and spring clamp arrangement. After extended use, some cap knobs may rotate without transferring sufficient torque to the sealing portion of the cap.

27.     This potential problem with the fuel filler cap in certain model year 1998 - 2003 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

28.     Approximately 680,000 Mercedes-Benz vehicles have the potential to develop this fuel filler cap problem.

29.     Defendants submitted an EDIR with respect to this emission-related defect on November 8, 2004.

30.    As a result of information available to Defendants concerning this emission-related defect, Defendants determined, or should have determined, that this emission-related defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to November 8, 2004.  Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

### Underhood Catalytic Converter Defect

31.    As alleged above, the catalyst is a device installed in the exhaust system of an internal combustion engine to control emissions.

32.    The under-hood catalysts of certain model year 1999 - 2001 M-Class Mercedes-Benz vehicles may develop circumferential cracks along the weld seam between the inlet funnel and the can body.  These cracks could result in untreated exhaust entering the atmosphere through the cracks and/or false information on fuel mixture being transmitted to the oxygen sensor.

33.    This potential problem with the catalysts in certain model year 1999 - 2001 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

34.    Approximately 79,000 Mercedes-Benz vehicles have the potential to develop this catalyst problem.

35.    Defendants submitted an EDIR with respect to this emission-related defect on February 28, 2005.

-8-

36.     As a result of information available to Defendants concerning this emissions-related defect, Defendants determined, or should have determined, that this emission-related defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to February 28, 2005.  Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

**Air-Injection Pump Defect**

37.     Certain Mercedes-Benz vehicles have an electronically-operated air injection pump.  The air injection pump operates for a short time during engine warm-up to provide extra oxygen to the catalytic converter.

38.     The air injection pumps in certain 2002 - 2006 model year Mercedes-Benz vehicles may malfunction, causing the pump to run continuously rather than only during engine warm-up.  This continual operation of the pump causes it to overheat and fail.

39.     This potential problem with the air injection pumps in certain model year 2002 - 2006 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

40.     Approximately 29,000 Mercedes-Benz vehicles have the potential to develop this air injection pump problem.

41.     Defendants submitted an EDIR with respect to this emission-related defect on July 15, 2005.

42.     As a result of information available to Defendants concerning this emissions-related defect, Defendants determined, or should have determined, that this emission-related

-9-

defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to July 15, 2005. Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

**Fuel Tank Pressure Sensor Defect**

43.     The fuel tank pressure sensor provides tank pressure information to the on-board diagnostic system to determine if a leak exists that would allow fuel vapor to escape into the atmosphere.

44.     The fuel tank pressure sensor on certain model year 2001 Mercedes-Benz vehicles may experience an electronic fault which could affect the control parameters and/or calibrations for the emission control related warning system.

45.     This potential problem with the fuel tank pressure sensors in certain model year 2000 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

46.     Approximately 43,100 Mercedes-Benz vehicles have the potential to develop this fuel tank pressure sensor problem.

47.     Defendants submitted an EDIR with respect to this emission-related defect on July 15, 2005.

48.     As a result of information available to Defendants concerning this emissions-related defect, Defendants determined, or should have determined, that this emission-related defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to July 15, 2005. Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

-10-

### Spark Plug Cable Defect

49.     The spark plug connectors on a vehicle connect the spark plugs to the electrical current emanating from the distributor of the vehicle.

50.     The spark plug connectors on certain model year 2001 - 2002 Mercedes-Benz vehicles may experience a short circuit that can affect spark plug voltage and keep the spark plug from firing.

51.     This potential problem with the spark plug connectors in certain model year 2001-2002 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

52.     Approximately 111,000 Mercedes-Benz vehicles have the potential to develop this spark plug connector problem.

53.     Defendants submitted an EDIR with respect to this emission-related defect on July 15, 2005.

54.     As a result of information available to Defendants concerning this emissions-related defect, Defendants determined, or should have determined, that this emission-related defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to July 15, 2005.  Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

**Ignition Module Defect**

55.     The ignition module on a vehicle provides a high-voltage electrical charge to the spark plug to ignite the fuel and air mixture in the engine cylinder.

56.     The ignition modules on certain model year 2001 Mercedes-Benz vehicles may fail due to high voltage discharge on the coil.

57.     This potential problem with the ignition modules in certain model year 2001 Mercedes-Benz vehicles is an emission-related defect because it is a defect in a device described in Defendants' Certificates of Conformity which affects certain of the parameters listed in Appendix VIII of 40 C.F.R. Part 85.

58.     Approximately 2,200 Mercedes-Benz vehicles have the potential to develop this ignition module problem.

59.     Defendants submitted an EDIR with respect to this emission-related defect on July 15, 2005.

60.     As a result of information available to Defendants concerning this emissions-related defect, Defendants determined, or should have determined, that this emission-related defect existed in 25 or more vehicles or engines of the same model year more than 15 working days prior to July 15, 2005.  Therefore, Defendants failed to file the EDIR within the time period required by 40 C.F.R. § 85.1903(b).

**CLAIM FOR RELIEF**

61.     The United States hereby realleges Paragraphs 14 - 60 of the Complaint.

62.     Section 208 of the Act, 42 U.S.C. § 7542, requires all manufacturers of new motor vehicles to make reports and provide information reasonably required by EPA in connection with Subchapter II, Part A of the Act, which deals with motor vehicle emissions.

-12-

63.     Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2), prohibits any person from failing to submit a report required under Section 208 of the Act.

64.     The EDIR reports required to be filed by 40 C.F.R. Part 85, Subpart T, are reports that are required to be submitted pursuant to Section 208 of the Act.

65.     Defendants' failure to file EDIRs in a timely fashion, as alleged at Paragraphs 14 - 60 above, was a violation of Section 203(a)(2) of the Act.

66.     Pursuant to Section 204(a) of the Act, 42 U.S.C. §7523, Defendants are liable for injunctive relief with respect to each violation of Section 203(a)(2) of the Act.

67.     Pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), Defendants are liable for civil penalties for each separate violation of Section 203(a)(2) of the Act and for each and every day such separate violations continued.

## PRAYER FOR RELIEF

Wherefore, plaintiff, the United States of America, respectfully demands judgment against Defendants, as follows:

A.     Permanently enjoining Defendants from failing or refusing to file with EPA an EDIR within fifteen days of determining, in good faith, that a specific emissions-related defect exists and that such defect exists in 25 or more vehicles of the same model year;

B.     Ordering Defendants to take appropriate action to remedy the violations of Section 203(a)(2)(A) of the Act, 42 U.S.C. § 42 U.S.C. § 7522(a)(2)(A), alleged above; and

C.     Assessing civil penalties, pursuant to Section 205(a) of the Act, 42 U.S.C. § 7524(a), and the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, codified as amended at 40 C.F.R. Part 19, against Defendants for each violation of Section

203(a)(2)(A) of the Act, alleged above, of up to $27,500 per day per violation occurring from January 30, 1997 to March 15, 2004, and of up to $32,500 per day per violation occurring after March 15, 2004.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resource Division

DONALD G. FRANKEL, D.C. Bar # 385086
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Suite 616
One Gateway Center
Newton, MA 02458
(617) 450-0442

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney
District of Columbia

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney
Chief, Civil Division
District of Columbia
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7151

_____

KEITH V. MORGAN, D.C. Bar #422665
Assistant United States Attorney
District of Columbia
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7228

OF COUNSEL:

JEFFREY A. KODISH
Attorney-Advisor
U.S. EPA
Air Enforcement Division
Mobile Sources Enforcement Branch
Western Field Office
12345 W. Alameda Parkway, Suite 214
Denver, CO 80228

-15-

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

DaimlerChrysler AG
Mercedes-Benz USA, LLC

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    1001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Donald G. Frankel
Department of Justice
Suite 616
One Gateway Center
Newton, MA 02458
617-450-0442

CASE NUMBER   1:06CV02172

JUDGE: Henry H. Kennedy

DECK TYPE: Administrative Agency Rev

DATE STAMP: 12/21/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP...
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ **A. Antitrust**
  - ☐ 410 Antitrust

- ○ **B. Personal Injury/Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ⊠ **C. Administrative Agency Review**
  - ☐ 151 Medicare Act
  - **Social Security:**
    - ☐ 861 HIA ((1395ff)
    - ☐ 862 Black Lung (923)
    - ☐ 863 DIWC/DIWW (405(g)
    - ☐ 864 SSID Title XVI
    - ☐ 865 RSI (405(g)
  - **Other Statutes**
    - ☐ 891 Agricultural Acts
    - ☐ 892 Economic Stabilization Act
    - ☒ 893 Environmental Matters
    - ☐ 894 Energy Allocation Act
    - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D. Temporary Restraining Order/Preliminary Injunction**
  - Any nature of suit from any category may be selected for this category of case assignment.
  - *(If Antitrust, then A governs)*

- ○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions** (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

○ **1 Original Proceeding**   ○ **2 Removed from State Court**   ○ **3 Remanded from Appellate Court**   ○ **4 Reinstated or Reopened**   ○ **5 Transferred from another district (specify)**   ○ **6 Multi district Litigation**   ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Action filed pursuant to Clean Air Act, (42 U.S.C. 7523 and 7524) alleging the failure of the defendants to timely file emission defect information reports.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _ _ _ _ _ _ _ _<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

DATE **12/21/06**   SIGNATURE OF ATTORNEY OF RECORD _Rudolph Contreras_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.