IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 1:06CV02172 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAIMLERCHRYSLER AG and | ) | |
| MERCEDES-BENZ USA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION OF UNITED STATES TO ENTER CONSENT DECREE

On December 21, 2006, the United States filed a complaint in this action against

defendants  DaimlerChrysler AG and Mercedes-Benz USA, LLC (collectively "Mercedes") and

lodged with the Court a proposed consent decree ("Decree").  The complaint seeks civil

penalties and injunctive relief under the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq.,

arising from Mercedes's alleged failure to timely file emission-defect information reports with

the U.S. Environmental Protection Agency ("EPA") with respect to emission-related defects in

certain model year 1998-2006 Mercedes vehicles.  The Decree requires Mercedes to pay a $1.2

million civil penalty and implement a Supplemental Emission-Related Defect Monitoring,

Investigation, and Reporting Protocol.

Notice of the Decree was published in the Federal Register on January 8, 2007.  72 Fed.

Reg. 799.  The United States received two comments on the Decree.  For the reasons discussed

in the Memorandum filed in support of this motion, the United States has determined that there is

nothing in the comments indicating that the Decree is improper, inappropriate, or inadequate.

See 28 C.F.R. § 50.7.  Accordingly, the United States respectfully requests that the Court

approve, sign, and enter the Decree.  There is a signature line for the Court on page 25 of the

Decree (Document 2, filed 12/21/06, page 32 of 42).

Pursuant to Local Rule 7(m), counsel for the United States consulted with counsel for Mercedes concerning this motion. Counsel for Mercedes indicated that Mercedes had no objection to the motion to enter (but noted that Mercedes had not seen the motion itself).

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resource Division


/s/ Donald G. Frankel
DONALD G. FRANKEL, D.C. Bar # 385086
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Suite 616
One Gateway Center
Newton, MA 02458
donald.frankel@usdoj.gov
(617) 450-0442


JEFFREY A. TAYLOR
United States Attorney
District of Columbia

KEITH V. MORGAN
Assistant United States Attorney
District of Columbia
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7228

<u>OF COUNSEL</u>:

JEFFREY A. KODISH
Attorney-Advisor
U.S. EPA
Air Enforcement Division
Mobile Sources Enforcement Branch
Western Field Office
12345 W. Alameda Parkway, Suite 214
Denver, CO 80228

<u>CERTIFICATE OF SERVICE</u>

I, Donald G. Frankel, hereby certify that I served the foregoing by using the CM/ECF electronic filing system, as well as by serving a copy, via First-Class mail, on the persons listed below on this 9th day of March, 2007.

 /s/ Donald G. Frankel
Donald G. Frankel

Patrick M. Raher
Partner
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 1:06CV02172 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAIMLERCHRYSLER AG and | ) | |
| MERCEDES-BENZ USA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO ENTER CONSENT DECREE

### I. INTRODUCTION

The United States has moved for entry of the proposed consent decree ("Decree") with

defendants  DaimlerChrysler AG and Mercedes-Benz USA, LLC (collectively "Mercedes"),

lodged with the Court on December 21, 2006.  The Decree resolves the United States's claims in

the complaint filed on December 21, 2006.  The complaint seeks civil penalties and injunctive

relief  under the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq. (the "Act"), arising from

Mercedes's alleged failure to timely file emission-defect information reports with the U.S.

Environmental Protection Agency ("EPA") with respect to emission-related defects in certain

model year 1998-2006 Mercedes vehicles.  The Decree requires Mercedes to pay a $1.2 million

civil penalty and implement a Supplemental Emission-Related Defect Monitoring, Investigation,

and Reporting Protocol.

Pursuant to 28 C.F.R. § 50.7, notice of the Decree was published in the Federal Register

on January 8, 2007.  72 Fed. Reg. 799.  The United States received two comments on the Decree.

One set of comments was submitted on behalf of Afton Chemical Corporation ("Afton").  See

Appendix A.  Afton does not oppose entry of the Decree, but seeks clarification of several

issues.  The United States, in part III.D.1 below, responds to Afton's comments.  The other set of comments was submitted by Ronald K. Hettinger, the owner of a 2000 Mercedes ML-320.  Mr. Hettinger states in his comment that the Decree should require Mercedes to reimburse him for the $800 he recently incurred in repairing the mass airflow sensor[1] on his vehicle. See Appendix B.  The United States, in part III.D.2 below, responds to Mr. Hettinger's comments.  The United States has determined that there is nothing in the comments submitted by Afton or Mr. Hettinger indicating that the Decree is improper, inappropriate, or inadequate.  See 28 C.F.R. § 50.7.

For the reasons set forth below, the Decree is fair, reasonable and consistent with the statutory scheme of Title II of the Act, 42 U.S.C. §§ 7521 - 7589, and in the public interest. Accordingly, the United States respectfully requests that the Court approve, sign, and enter the Decree.

## II. BACKGROUND

### A.     Emission Defect Investigation and Reporting

Title II of the Act addresses emissions from "mobile sources," including motor vehicle emission and fuel standards which are covered by Part A at 42 U.S.C. § 7521 et seq.  New motor vehicles or motor vehicle engines cannot lawfully be sold in the United States unless a "certificate of conformity" has been issued by EPA and is in effect for the vehicle or engine. Section 203(a) of the Act, 42 U.S.C. § 7522(a).  To obtain a certificate of conformity, EPA requires that a manufacturer test a prototype of the vehicle or engine to determine if the new motor vehicle or engine meets the applicable emissions standards.  Section 206(a) of the Act, 42 U.S.C. § 7525(a).

---

[1] The mass airflow sensor is a device that is used to determine the amount of air flowing into the engine.

Manufacturers of motor vehicles, such as Mercedes, have continuing obligations after obtaining a certificate of conformity. Manufacturers are required to warrant to the ultimate purchaser that new motor vehicles are: (i) designed, built, and equipped to conform to the applicable emission standards at the time of sale, and (ii) free from defects that would cause the motor vehicle to fail to conform to such standards during the applicable warranty period. Section 207(a)(1) of the Act, 42 U.S.C. § 7541(a)(1). Should a vehicle fail to conform to the emission standards promulgated under Section 202 of the Act, 42 U.S.C. § 7521, during the applicable warranty period, the manufacturer is required to repair the vehicle, at no cost to the owner. Section 207(h) of the Act, 42 U.S.C. § 7541(h).

Manufacturers are also required by Section 208(a) of the Act, 42 U.S.C. § 7542(a), to:

establish and maintain records, perform tests . . . make reports, and provide information the Administrator may reasonably require to determine whether the manufacturer . . . has acted or is acting in compliance with this part and part C of this subchapter and regulations thereunder. . . .

EPA has promulgated regulations requiring automobile manufacturers to report emission-related defects in its vehicles to EPA, which are codified at 40 C.F.R. §§ 85.1901-1909 ("EDIR Regulations"). Pursuant to the EDIR Regulations, a manufacturer is required to file with EPA an emissions defect information report, or "EDIR," within 15 business days after a manufacturer determines: (i) in accordance with the procedures established by the manufacturer to identify safety related defects pursuant to the National Traffic and Motor Vehicle Safety Act that a specific emission-related defect exists; and (ii) that the specific emissions-related defect exists in twenty-five or more vehicles of the same model year. See 40 C.F.R. § 85.1903. An "emission-related defect" means a defect in the design, materials, or workmanship in a device, system, or assembly described in the application for the certificate of conformity which affects any

-3-

parameter specified in Appendix VIII of 40 C.F.R. Part 85.  See 40 C.F.R. § 85.1902(b).

Appendix VIII of 40 C.F.R. Part 85 lists various parameters that can have an impact on

automobile emissions such as, for example, "engine idle speed" and "engine idle mixture."

## B.    Allegations of the Complaint

The complaint alleges that eight of the EDIRs filed by Mercedes from July 2004 to July

of 2005 were not filed in a timely manner.  In particular, the complaint alleges that Mercedes

failed to file these eight EDIRs within 15 days of the date that Mercedes knew, or should have

known, that an emission-related defect was present in 25 vehicles in the same model year.  The

eight EDIRs alleged to have been filed in an untimely manner are as follows: (a) the EDIR

submitted July 30, 2004 related to defects in mass airflow sensors on certain 1998-2000 vehicles,

(b) the EDIR submitted July 30, 2004 related to defects in underfloor catalytic converters on

1998-2003 models with M112 and M113 engines,[2] (c) the EDIR submitted November 8, 2004

related to defects with the fuel filler cap on certain 1998-2003 vehicles, (d) the EDIR submitted

February 28, 2005 related to defects in the under-hood catalysts of certain 1999-2001 M-class

vehicles, (e) the EDIR submitted July 15, 2005 related to defects in the air pump of certain 2002-

2004 vehicles, (f) the EDIR submitted July 15, 2005 related to defects in the fuel tank pressure

sensor on certain 2001 vehicles, (g) the EDIR submitted July 15, 2005 related to defects in the

---

[2]  The catalytic converter ("catalyst")  is a device installed in the exhaust system of an internal
combustion engine that controls emissions.  Typically, the catalyst consists of a metallic can or
shell containing a ceramic honeycomb or "brick," coated with precious metals that store or
release nitrogen or oxygen atoms, causing reactions that reduce emissions of pollutants including
hydrocarbons, carbon monoxide, and oxides of nitrogen.  The vehicles sold by Mercedes have
both primary under-hood catalysts and secondary under-floor catalysts.  The exhaust first passes
through the primary under-hood catalyst, which is located nearer the engine, and then through
the secondary under-floor catalyst.

ignition cable of certain 2001-2002 vehicles, and (h) the EDIR submitted July 15, 2005 related to defects in the ignition module of certain 2001 vehicles.

The complaint asserts a claim, pursuant to Section 205(b) of the Act, 42 U.S.C. § 7524(b), for civil penalties in an amount of up to $27,500 per day per violation occurring from January 1, 1997 to March 15, 2004, and of up to $32,500 per day per violation occurring since March 15, 2004.  The complaint also seeks injunctive relief, pursuant to Section 204 of the Act, 42 U.S.C. § 7523, enjoining Mercedes from failing or refusing to file EDIRs in a timely manner and for other relief necessary to remedy the violations.

## C.   The Consent Decree

The Decree requires Mercedes to pay a civil penalty in the amount of $1.2 million. Decree ¶ 13.  The Decree requires Mercedes to comply with the EDIR Regulations as well as any amendments thereof.  Decree ¶ 8, Appendix B.  In addition to complying with the EDIR Regulations, Mercedes must implement the Supplemental Emission-related Defect Monitoring, Investigation and Reporting Protocol ("Supplemental Protocol"), which is attached to the Decree at Appendix B.  Decree ¶¶ 8 - 9.  The Supplemental Protocol requires Mercedes to establish an Emissions Compliance Reporting Group ("ECRG") to review three types of information on at least a quarterly basis: all warranty claims submitted to Mercedes with respect to emission-related components for vehicles in the United States, all running change notices,[3] and all dealer

---

[3]  As discussed above, manufacturers must submit to EPA applications for "certificates of conformity" – essentially annual permits – allowing the sale of each model year and engine family of its vehicles prior to offering them for sale.  Running change notices are notices provided by a manufacturer during the course of the year concerning changes in the design of the vehicles that deviate from the design set forth in the approved certificate of conformity.

technical bulletins[4].  The Supplemental Protocol further requires the ECRG to commence an investigation, to determine whether Mercedes is required to submit an EDIR, whenever (a) the number of warranty claims that have been submitted with respect to a specific emissions-related component is an amount greater than or equal to the lesser of four percent or 1,400 of the vehicles that contain such component in an engine family or test group in a particular model year, (b) a running change notice or dealer technical bulletin has been issued with respect to an emission-related component due to an emission-related defect, or (c) Mercedes has actual knowledge that a specific emissions-related defect may exist in 25 or more vehicles in a model year.  The Supplemental Protocol requires Mercedes to review warranty data for the entire applicable warranty period, even if the applicable warranty period extends beyond the five-year period set forth in the EDIR Regulations for the reporting of defects.[5]  The Supplemental Protocol also provides that, if Mercedes conducts an investigation based on warranty claims and determines that, at any time during the applicable warranty period, 25 or more vehicles in a particular model year have an emission-related defect, Mercedes must file a report with EPA concerning the defect regardless of whether or not five years have elapsed since the end of the model year in which the vehicle was manufactured.  Since federal law requires that the major emissions-related components be covered by a warranty for eight years/80,000 miles (whichever occurs first), the Supplemental Protocol in effect extends the reporting period by up to three

---

[4]  Dealer technical bulletins are technical information provided by a manufacturer to its dealers concerning potential problems with its vehicles and how to correct those problems.

[5]  Under the EDIR Regulations, the requirement to report emission-related defects remains applicable for five-years from the end of the model year in which the vehicles were manufactured.  See 40 C.F.R. § 85.1901.

years for these major components.[6]

The Decree resolves the United States's civil claims for penalties and injunctive relief under Sections 203, 204, 205 and 208 of the Act, 42 U.S.C. §§7522, 7523, 7524 and 7542, with respect to (a) the violations alleged in the Complaint and (b) the failure to timely file the eight EDIRs, as well as two additional EDIRs filed during the same time period[7] (all ten EDIRs are referred to in the Decree as the "Subject EDIRs").  Decree ¶ 46.

Mercedes has commenced voluntary recalls with respect to (a) the emission-related defect identified in the EDIR submitted on February 28, 2005 with respect to the catalytic converters on certain model year 1999-2001 M-Class vehicles and (b) the emission-related defect identified in the EDIR submitted July 15, 2005 with respect to the air injection pumps on certain model year 2002-2004 vehicles.  Mercedes has also extended its emissions warranty with respect to the emission-related defect identified in the EDIR submitted July 27, 2004 with respect to the catalytic converters on ceratin model year 2000 S-Class and CL-Class vehicles.  In view of these voluntary actions, as well as EPA's review of information concerning the defects disclosed in the Subject EDIRs (including the number of defects and the impact of the defects on vehicle emissions), EPA determined, based on the information currently available, that there was

---

[6]  The Supplemental Protocol also requires Mercedes to file Status Reports, on an annual basis, identifying each investigation of potential Emission-related Defects that Mercedes commenced, conducted, or completed during the term of the Decree, describing the status of each such investigation, and indicating whether an EDIR report (or a Supplemental Report) had been filed with respect to such investigation.

[7]  The two additional EDIRs are (a) the EDIR submitted July 30, 2004 related to defects in underhood and underfloor catalysts in 2000 S-Class and CL-Class vehicles and (b) the EDIR submitted on October 15, 2004 related to the inner funnel in catalysts on certain 2004-2005 vehicles.

no need for the Decree to contain injunctive relief relating to the correction of the emission-related defects disclosed in the Subject EDIRs.[8]

### III. <u>ARGUMENT</u>

**THE COURT SHOULD ENTER THE PROPOSED DECREE AS IT IS A FAIR, ADEQUATE, AND REASONABLE SETTLEMENT CONSISTENT WITH THE PUBLIC INTEREST.**

The standard to be applied by a court reviewing a proposed consent decree is whether the settlement is "'fair, adequate, reasonable, and appropriate under the particular facts and that there has been valid consent by the concerned parties.'" <u>Environmental Defense v. Leavitt</u>, 329 F. Supp. 2d 55, 70 (D.D.C. 2004) (quoting <u>Citizens for a Better Environment v. Gorsuch</u>, 718 F.2d 1117, 1126 (D.C. Cir. 1983)) (citations omitted). <u>See also</u> <u>United States v. District of Columbia</u>, 933 F. Supp. 42, 46-47 (D.D.C. 1996)). In general, a reviewing court should be satisfied that a proposed settlement fairly and reasonably resolves a controversy in a manner consistent with the public interest. <u>Environmental Defense</u>, 718 F. Supp. 2d at 70 (citation omitted). Furthermore, this Court has recognized that the policy of favoring settlements "has particular force where . . . a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." <u>Id.</u> (quoting <u>United States v. Cannons Engineering Corp.</u>, 899 F.2d 79, 84 (1st Cir. 1990)).

---

[8]  The Decree's covenant not to sue does not include a covenant not to bring enforcement actions under Section 207(c) of the Act, 42 U.S.C. § 7541(c), which authorizes EPA to order a manufacturer to take corrective action where EPA determines that a substantial number of any class or category of vehicles or engines, although properly maintained and used, do not conform to the applicable emissions standards at any time during the useful life of the vehicles.

A.      **The Decree Is Procedurally and Substantively Fair**.

Whether a proposed decree is "fair" invokes notions of procedural fairness and substantive fairness.  Factors to be considered in reviewing procedural fairness include the "good faith" efforts of the parties to resolve a dispute, "the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved."  Environmental Defense v. Leavitt, 329 F. Supp. 2d at 70 (quoting United States v. District of Columbia, 933 F. Supp. at 48).  See also, e.g.,  United States v. Hooker Chem. & Plastics Corp., 607 F. Supp. 1052, 1057 (W.D.N.Y.), aff'd, 776 F.2d 410 (2d Cir. 1985).  Substantive fairness involves "concepts of corrective justice and accountability."  Id.

The Decree is the product of arm's length negotiations between EPA, represented by experienced Agency counsel and the Department of Justice, and Mercedes,  represented by experienced in-house and outside counsel.  The settlement holds Mercedes  accountable for its failure to timely file EDIRs by imposing a $1.2 million penalty.  The settlement also requires that Mercedes, in addition to complying with the EDIR Regulations, implement the Supplemental Protocol.  The implementation of this Supplemental Protocol is expected to enhance the ability of Mercedes to detect emission-related defects in its vehicles and to report such defects to EPA in a timely manner.  This supplemental injunctive relief is appropriate in vew of Mercedes's past violations of the EDIR Regulations.  Thus, the Decree is both procedurally and substantively fair.

B.      **The Decree Is Reasonable**.

The factors for determining the "adequacy, reasonableness, and appropriateness" of a proposed consent decree "focus on the extent to which the decree is confined to the dispute

between the parties and whether the decree adequately accomplishes its purported goal."

Environmental Defense, 329 F. Supp.2d at 71. The reviewing court should determine whether

the proposed decree is "reasonable from an objective point of view" and should not "impose its

own judgments as to how it would prosecute and resolve a particular case." United States v.

District of Columbia, 933 F. Supp. at 51.

The Decree is objectively reasonable, addressing the conduct and consequences of

Mercedes's failure to file timely EDIRs with EPA. The EDIR Regulations require prompt

reporting when a manufacturer determines that a specific emission-related defect exists in 25 or

more vehicles or engines of the same model year. Prompt reporting allows EPA to monitor the

status of potential defects and, where necessary, require manufacturers to take corrective action

to address such defects. The $1.2 million civil penalty makes clear that EPA will vigorously

enforce a manufacturer's obligation to timely report emission-related defects. In addition to a

substantial civil penalty, the Decree requires Mercedes to implement the Supplemental Protocol

in order to improve its future compliance with the EDIR Regulations. The Decree is thus

objectively adequate, reasonable, and appropriate.

## C.    **The Decree Is In The Public Interest**.

Congress passed the Act "to protect and enhance the quality of the Nation's air resources

so as to promote the public health and welfare and the productive capacity of its population."

Section 101(a)(1) of the Act, 42 U.S.C. § 7401(b)(1). In 1990, Congress amended the Act,

including the mobile source control provisions of Title II, in recognition of the fact that

"[c]ontrols on emissions from mobile sources [i.e., cars, trucks, and other vehicles] will be an

important part of the efforts to attain healthy air . . . for a simple reason:  mobile vehicles are the

-10-

largest source of ozone and carbon monoxide pollution." S. Rep. No. 101-228 (1989) reprinted in 1990 U.S.C.C.A.N. 3385, 3468. The Decree furthers these Congressional goals and thus serves the public interest. The Decree requires Mercedes to pay a substantial civil penalty and to implement the Supplemental Protocol. The payment of the civil penalty will encourage Mercedes, as well as other automobile manufacturers, to focus greater efforts on complying with the EDIR Regulations. The implementation of the Supplemental Protocol, as noted above, will enhance the ability of Mercedes to detect and report emission-related defects. In addition, the Supplemental Protocol will require Mercedes to provide to EPA annual Status Reports concerning all investigations of potential Emission-related commenced, continued, or concluded by Mercedes during the term of the Decree. These Status Reports will greatly assist EPA in monitoring Mercedes's compliance with the Supplemental Protocol and the EDIR Regulations. Thus, the Decree is consistent with and enforces existing law and is in the public interest.

**D. Neither of the Comments Submitted with Respect to the Decree Indicate that the Decree is Inadequate, Improper or Inappropriate**

As noted above, comments on the Decree were submitted by Afton Chemical Corporation and Ronald K. Hettinger. See Appendices A and B. Pursuant to 28 C.F.R. § 50.7, the United States has reviewed the comments and has determined that there is nothing in the comments indicating that the Decree is inadequate, inappropriate, or improper.

**1. Comments Submitted by Afton Chemical Corp.**

Afton states that it does not oppose entry of the Decree but seeks clarification of two issues. Afton Comments at 1. Although the United States believes that the Decree does not require clarification with respect to these issues, the United States responds to Afton's comments below.

-11-

First, Afton points out that the Supplemental Protocol requires Mercedes to consider warranty data with respect to vehicles located in the United States, but does not require Mercedes to consider warranty data from vehicles in foreign countries.  Afton Comments at 2 - 3.  Afton asserts that the Government should explain how and why Mercedes's "existing" monitoring obligations and the "enhanced" system in the Supplemental Protocol differ with respect to this issue.  Id. at 3.

The purpose of the Supplemental Protocol is to enhance Mercedes's ability to detect and report emission-related defects by requiring it to implement a formal structure to evaluate certain specific information on at least a quarterly basis and, based on its review of that information, decide whether it must conduct an investigation to determine whether an EDIR must be filed pursuant to the EDIR Regulations (or whether a report is required under Paragraph 10 of the Supplemental Protocol).  The Supplemental Protocol requires Mercedes to establish an Emission Compliance Reporting Group ("ECRG"), made up of individuals from Mercedes's Office of Certification and Regulatory Affairs and Office of General Counsel, to monitor and investigate potential emission-related defects.

As Afton notes, the Supplemental Protocol requires the ECRG to review all warranty data for vehicles located in the United States, but does not require the ECRG to review foreign warranty data.  The terms of the Supplemental Protocol are the result of bargaining between the United States and Mercedes.  Although the Supplemental Protocol could no doubt list additional types of information to be reviewed by the ECRG, the United States determined that requiring Mercedes to set up a specific process for reviewing the three types of information listed - including all warranty claims for vehicles in the United States - was adequate to serve the

purposes of the Supplemental Protocol.

Finally, the Supplemental Protocol does not encompass all of Mercedes's obligations under the EDIR Regulations. The Decree and the Supplemental Protocol make clear that Mercedes, in addition to complying with the Supplemental Protocol, is required to comply with the EDIR Regulations.[9] Thus, to the extent that the EDIR Regulations require Mercedes to consider foreign data, or any other data for that matter, Mercedes is still obligated to do so.

Second, Afton asserts that there may be confusion concerning the time period during which Mercedes is obligated to report potential emission-related defects to EPA. Afton notes that the EDIR Regulations require manufacturers to report defects for "five years from the end of the model year in which such vehicles or engines were manufactured." 40 C.F.R. § 85.1901. Afton also notes that the Supplemental Protocol has a "Supplemental Reporting" requirement which states that Mercedes shall evaluate the warranty claims during the "entire applicable warranty period" and that, if based on its review of the warranty information, Mercedes conducts an investigation and determines that an emission-related defect exists in 25 or more vehicles of the same model year at any time during the applicable warranty period, and has not already reported such defects pursuant to the EDIR Regulations, then Mercedes must file a report concerning the defect. Supplemental Protocol at 3 - 4. In its comments, Afton asks for clarification of what is meant by the "entire applicable warranty period." Afton Comments at 4.

---

[9]  The Decree provides that "Mercedes-Benz shall file EDIRS in accordance with the requirements of 40 C.F.R. §85.1903, or any amendments thereof, with respect to Mercedes-Benz Vehicles." Decree ¶ 8. The introductory paragraph of the Supplemental Protocol provides that Mercedes shall implement the requirements of the Supplemental Protocol "[i]n addition to complying with all applicable federal laws regarding the reporting of Emission-related Defects, including 40 C.F.R. Part 85, Subpart T, or any amendments thereof."

In particular, Afton asks whether the phrase "entire applicable warranty period" is to apply on a component-by-component basis, or whether it refers to the longest warranty period for the various components on the vehicles.  Id.

The phrase "entire applicable warranty period" applies on a component-by-component basis.  In fact, the entire Supplemental Protocol requires Mercedes to consider data on a component-by-component basis.  Paragraph 1 of the Supplemental Protocol states that Mercedes is to "collect and retain information pertaining to Emission-Related Components" from various sources, including "[i]nformation about all federal emissions warranty claims, California emissions warranty claims, or other Mercedes-Benz warranty claims for Emission-related Components with respect to vehicles located in the United States ("Nationwide Warranty Claims")." (emphasis added).  Paragraph 3 of the Supplemental Protocol further provides that Mercedes is to conduct an internal investigation once "[t]he number of unscreened Nationwide Warranty Claims received by [Mercedes] on or after February 1, 2004, for the same Emission-related Component, is an amount greater than or equal to the lesser of four percent or 1,400 of the vehicles that contain such component in an Engine Family or Test Group in a particular Model Year."  (emphasis added).  Finally, Section 10 of the Supplemental Protocol provides that "[Mercedes] shall evaluate Nationwide Warranty Claims within the process described in Paragraphs 1 and 3 . . . during the entire applicable warranty period."  Paragraph 10 also provides that if Mercedes determines that, at any time during the applicable warranty period, an Emission-related Defect exists in 25 or more vehicles in the same Model Year and such defect has not been reported under the EDIR Regulations, Mercedes must file a report under the

Supplemental Protocol.[10]  Given the structure of the Supplemental Protocol, it is clear that the

phrase "entire applicable warranty period" applies on a component-by-component basis.  In fact,

the phrase "entire applicable warranty period" could not apply on a vehicle-by-vehicle basis

because, as discussed above, there is no single warranty period applicable to the entire vehicle.

Rather, different emission-related components have different applicable warranty periods based

on the nature of the component.

Given the requirements of Paragraph 10 of the Supplemental Protocol, Mercedes must

file a report where 25 or more defects are found in a model year at any time during the applicable

warranty period, based on an investigation triggered by a review of warranty data, even if the

warranty data pertains to vehicles that were manufactured in a model year that ended more than

five years prior to the review, which would be beyond the five-year reporting period set forth in

the EDIR Regulations.  As noted above, this is significant because, as required by 42 U.S.C. §

7541(i), Mercedes provides a warranty of 8 years/80,000 miles (whichever occurs first) for the

three major emission control devices: catalytic converters, the electronic emissions control unit,

and the vehicle on-board diagnostic (OBD) system.[11]  Thus, for example, if a review of catalytic

---

[10]  The Decree defines the term Emission-related Defect as a "defect in design, materials, or
workmanship in a device, system, or assembly described in [the certificate of conformity] which
affects any parameters or specification enumerated in Appendix VIII [of the EDIR
Regulations]."  Decree ¶ 4.h.

[11]  The minimum warranty period under federal law for other emission control components is 2
years/24,000 miles (whichever occurs first).  Section 207(i) of the Act, 42 U.S.C. § 7541(i).
However, Mercedes, at this point in time, offers a bumper-to-bumper warranty of 4 years/50,000
miles (whichever occurs first) that would be applicable to these other emission control
components.  In California (and certain other states), Mercedes provides a warranty of 7
years/70,000 miles (whichever occurs first) for some of these other components because
California (and certain other states) requires manufacturers to provide a minimum warranty of 3

(continued...)

converter warranty data indicates that there is a defect in 25 or more vehicles for a model year that is within the 8-year warranty period, but beyond the 5-year regulatory reporting period, Mercedes will be required to file a report concerning the defect, even though the EDIR Regulations would not require such a report.

Afton also asks whether the Government intends to imply, based on Paragraph 10 of the Supplemental Protocol, that "nationwide warranty claims" need only be reviewed during the "applicable warranty period," even if such period is less than the five-year reporting period set forth in the EDIR Regulations. As an initial matter, warranty data for a particular component exists only during the applicable warranty period for that component; once that period is over, there is no warranty information available. Thus, the Supplemental Protocol requires Mercedes to consider all available warranty data. Moreover, nothing in the Decree or the Supplemental Protocol shortens the five-year reporting period set forth in the EDIR Regulations. As discussed above, Paragraph 10 of the Supplemental Protocol requires Mercedes to file reports with EPA concerning potential defects, based on warranty data, even if the regulatory five-year reporting period has expired.

## 2. __Comments Submitted by Ronald K. Hettinger__

Comments were also submitted by Ronald K. Hettinger, the owner of a 2000 Mercedes ML-320 who lives in Oceanside, California. <u>See</u> Appendix B. Mr. Hettinger states that he recently had to replace (or repair) his faulty mass airflow sensor at a cost of $800 and that his vehicle is just over 80,000 miles. Mr. Hettinger asserts that the Decree should require Mercedes to reimburse him for this cost.

---

[11](...continued)
years/50,000 miles (whichever occurs first) for some emission control components and of 7 years/70,000 miles (whichever occurs first) for other emission control components.

-16-

The federal warranty regulations require a minimum warranty of 2 years/24,000 miles (whichever occurs first) for the mass airflow sensor. Since the mass airflow sensor on Mr. Hettinger's vehicle appears to have been repaired (or replaced) outside the minimum federal 2 year/24,000 mile warranty period, the United States has no basis, pursuant to Section 207(a) of the Act, 42 U.S.C. § 541(a), to require that Mercedes reimburse Mr. Hettinger for the cost of the repair.[12]

Section 207(c) of the Act, 42 U.S.C. § 7541(c), does give EPA the authority to order a manufacturer to recall and repair or replace defective components (at the manufacturer's expense) if EPA "determines that a substantial number of any class or category of vehicles or engines, although properly maintained and used, do not conform to the [applicable emission limits set forth at 42 U.S.C. § 7521], when in actual use throughout their useful life."[13] EPA, however, did not require that Mercedes implement a recall with respect to the mass airflow sensors because EPA does not, at this point in time, have information indicating that the defect in the mass airflow sensors is causing Mercedes vehicles to exceed the federal emissions limits.

Mr. Hettinger also states that Mercedes should be required to replace or repair all of the alleged defects at issue in this case at Mercedes's expense. However, as noted above, the United States is satisfied that the two voluntary recalls and the warranty extension being implemented by Mercedes are appropriate in view of the number of vehicles impacted by the defects identified

---

[12] The United States understands that Mercedes provided a warranty for the mass airflow sensor in 2000 Mercedes ML-320 vehicles sold in California of 4 years/50,000 miles (whichever occurs first). (Under California law, the minimum warranty period for the mass airflow sensor in Mr. Hettinger's vehicle would be 3 years/50,000 miles (whichever occurs first)).

[13] The "useful life" for Mr. Hettinger's vehicle would be 10 years/100,000 miles (whichever occurs first). Section 202(d) of the Act, 42 U.S.C. § 7521(d).

in the Subject EDIRs as well as the impact of these defects on vehicle emissions. With respect to the seven defects where Mercedes is not implementing a recall or a warranty extension, EPA, at this point in time, does not have evidence that the defects are causing vehicles to exceed the applicable emissions standards.

In sum, the United States does not believe that either of the comments submitted with respect to the Decree indicate that the Decree is inadequate, improper, or inappropriate.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court should approve and sign the Decree and enter it as a final judgment.

Respectfully submitted,


Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resource Division


<u>/s/ Donald G, Frankel</u>
DONALD G. FRANKEL, D.C. Bar # 385086
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Suite 616
One Gateway Center
Newton, MA 02458
donald.frankel@usdoj.gov
(617) 450-0442

JEFFREY A. TAYLOR
United States Attorney
District of Columbia

KEITH V. MORGAN
Assistant United States Attorney
District of Columbia
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7228

OF COUNSEL:

JEFFREY A. KODISH
Attorney-Advisor
U.S. EPA
Air Enforcement Division
Mobile Sources Enforcement Branch
Western Field Office
12345 W. Alameda Parkway, Suite 214
Denver, CO 80228

<u>CERTIFICATE OF SERVICE</u>

I, Donald G. Frankel, hereby certify that I served the foregoing by using the CM/ECF electronic filing system, as well as by serving a copy, via First-Class mail, on the persons listed below on this 9th day of March, 2007.

 /s/ Donald G. Frankel
Donald G. Frankel


Patrick M. Raher
Partner
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20006

<u>APPENDIX A</u>

COMMENTS SUBMITTED BY AFTON CHEMICAL
CORPORATION

**Kevin L. Fast, Esq.**
**Law Office of Kevin L. Fast**
**8300 Boone Blvd.**
**Suite 528**
**Vienna, Virginia 22182**

Telephone:  (703) 761-6739
Facsimile:  (703) 848-4586
E-mail:  klflawoffice@cox.net

February 7, 2007

<u>**VIA ELECTRONIC AND FIRST CLASS MAIL**</u>

Matthew McKeown
Acting Assistant Attorney General
Environmental  and Natural Resources Division
PO Box 7611
U.S. Department of Justice
Washington, D.C.  20044-7611

**Re:**     **Notice of Lodging of Proposed Consent Decree in *United States v. DaimlerChrysler AG, D.J. Ref. 90-5-2-1-08769,* 72 Fed. Reg. 799 (January 8, 2007)**

Dear Mr. McKeown:

These comments concerning the above-referenced consent decree ("Consent Decree") are submitted on behalf of Afton Chemical Corporation ("Afton Chemical").  Afton Chemical appreciates the opportunity to submit these comments for consideration by the U.S. Department of Justice.

<u>**The Relevance of the Consent Decree to Afton Chemical**</u>

Afton Chemical manufacturers and markets fuel additives and lubricants for use in motor vehicles.  To help guide new product development and to ensure that the products Afton Chemical manufacturers and markets are compatible with the proper operation of motor vehicles, Afton Chemical monitors the reports submitted by motor vehicle manufacturers concerning defects in emission control system components as mandated by 40 C.F.R. Part 85, Subpart T, including those to be submitted under the Consent Decree.[1]

<u>**Afton Chemical's Comments on the Consent Decree**</u>

Afton Chemical does not oppose entry of the Consent Decree, but in two respects, believes that clarification is necessary to ensure that the terms and conditions of the Consent Decree are fully

---

[1]  Afton Chemical has a direct and particular interest in reports submitted by DaimlerChrysler AG and its affiliated companies ("DaimlerChrysler") because DaimlerChrysler has made allegations that one of the products marketed by Afton Chemical -- methylcyclopentadienyl manganese tricarbonyl (or "MMT®") -- has caused the failure of vehicle emission control system components in places where MMT® is used in gasoline, which includes North America.

Matthew McKeown
February 7, 2007

consistent with the criteria for approval of consent decrees set forth in 28 U.S.C. § 50.7.  Both issues relate to the interplay between the "enhanced" and "existing" defect reporting systems addressed in the Consent Decree.  The first issue concerns the relevance of emission-related component operation on vehicles in foreign countries.  The second issue concerns the duration of reporting requirements under the two different defect reporting systems.[2]

### Emission-Related Component Operation on Vehicles in Foreign Countries

The Consent Decree states that DaimlerChrysler must comply "with all applicable federal laws regarding the reporting of Emission-related Defects, including 40 C.F.R. Part 85, Subpart T, or any amendments made thereof . . . ."[3]  The Consent Decree further directs DaimlerChrysler to "enhance its *existing* system for the monitoring, investigation and reporting of Emission-related Defects" using the procedures and methods set forth in Appendix B of the Consent Decree.[4]  One provision of Appendix B intended to "enhance" DaimlerChrysler's existing defect reporting system specifies that Daimler Chrysler must monitor "information about all federal emissions warranty claims, California emissions warranty claims or other [DaimlerChrysler] warranty claims for Emission-related Components *with respect to vehicles located in the United States* ("Nationwide Warranty Claims")."[5]

Limiting the "enhanced" monitoring function solely to "vehicles located in the United States" creates potential confusion because it conflicts with EPA's existing regulatory framework for investigating the existence of emission-related defects.  EPA's existing framework directs vehicle manufacturers to use "procedures established by the manufacturer to identify safety related defects (pursuant to 15 U.S.C. 1381 et seq.,[6] as amended)" to determine "that a specific emission-related defect exists."[7]  To this end, the National Highway Traffic Safety Administration ("NHTSA") has established detailed requirements concerning the procedures to be used by vehicle manufacturers for identifying the existence of safety-related defects.

NHTSA's regulations are set forth in 49 C.F.R. Part 579.  In brief, NHTSA requires automobile manufacturers to analyze in-use vehicle performance data obtained from a wide variety of sources (e.g., warranty information, field reports, consumer complaints, etc.) to determine the existence of safety defects, and whenever they are determined to exist, to report them to NHTSA.  Since November 2000, moreover, vehicle manufacturers have had to evaluate the performance of vehicles in foreign countries, including Canada, for possible reporting of safety-related defects to NHTSA if the vehicles operating in the foreign country are substantially similar to any vehicles

---

[2] Afton Chemical appreciates that the Consent Decree states that "[n]othing contained in this Consent Decree is intended to waive or modify any requirement to submit reports or notifications to the United States or EPA as required by any statute, regulation, or other law or provision."  Consent Decree, ¶ 11.  However, to the extent that the Consent Decree imposes "enhanced" reporting obligations that potentially conflict with the "existing" reporting obligations, the conflicting provisions may act to obscure DaimlerChrysler's (or any other automaker's) obligations under either reporting scheme.

[3] Consent Decree, Appendix B, Introductory Paragraph.

[4] *Id.* (emphasis added).

[5] *Id.*, ¶ 1.a (emphasis added).

[6] Recodified at 49 USC § 30101.

[7] 40 C.F.R. § 85.1903(a)(1) (footnote not in original).

Matthew McKeown
February 7, 2007

operating in the U.S.[8]  This change in the law triggered, in turn, a parallel obligation to evaluate the performance of emission-related components under similar circumstances since EPA's regulations specifically anticipate that 15 U.S.C. §1381 *et seq.* (now 49 U.S.C. § 30101 *et seq.*) would be amended from time to time.[9]  Accordingly, DaimlerChrysler's "existing" monitoring and reporting responsibilities extend, where appropriate, to the operation of emission-related components on vehicles in foreign countries, including Canada, and, therefore, to vehicles not otherwise "located in the United States."[10]

To avoid confusion concerning the interplay between DaimlerChrysler's "existing" monitoring obligations and the new "enhanced" monitoring obligations imposed by the Consent Decree, the Government should clearly explain how and why the two monitoring systems differ on this important point (if, in fact, that is the intent of the Consent Decree).

**The Duration of the Defect Reporting Requirements**

Section 85.1901 of EPA's existing defect reporting regulations provides that "[t]he requirement to report emission-related defects affecting a given class or category of vehicles or engines shall remain applicable *for five years from the end of the model year in which such vehicles or engines were manufactured.*"  (Emphasis added.)  By contrast, the "enhanced" reporting system contained in the Consent Decree provides that DaimlerChrysler "shall evaluate Nationwide Warranty Claims within the process described in Paragraphs 1 and 3 of this Appendix B *during the entire applicable warranty period.*"  The Consent Decree does not define, however, the phrase "applicable warranty period."

For both commercial and regulatory reasons, the applicable "warranty periods" may be longer or shorter than the five year period set forth in § 85.1901.  From a regulatory standpoint, for example, § 207(i) of the Clean Air Act establishes a general 2 year or 24,000 mile period for most emission-related components subject to the § 207(a)(1)(B) "defect" warranty.[11]  At the other end of the spectrum, some automakers offer warranties for commercial reasons that may extend for as long as (or longer than) ten years or 100,000 miles of operation.

From Afton Chemical's perspective, the different reporting periods noted above create confusion as to the precise interplay intended by the Government for the "existing" and "enhanced" defect reporting systems.  Among the questions that arise are the following:

---

[8]  *See* 49 C.F.R. Part 579, Subpart B.  *See also* "Compendium for Early Warning Reporting for Manufacturers of Motor Vehicle Equipment," Office of Defects Investigation, National Highway Traffic Safety Administration (September 2003, Version 2).

[9] *See* 40 C.F.R. § 85.1903(a)(1) (expressly referring to the relevant statutory provision "as amended").

[10] In a separate enforcement proceeding involving EPA's defect reporting program initiated against Volkswagen of America, Inc., the Government observed that "[t]he manufacturer's duty to report emissions-related defects to EPA is thus closely tied to the manufacturer's duty to investigate defects under the National Traffic and Motor Vehicles Safety Act."  Memorandum of Points and Authorities in Support of Motion to Enter Consent Decree, *United States v. Volkswagen of America, Inc.*, Civ. No. 1:05-CV-01193-GK (November 4, 2005), p. 4.

[11] *See* 42 U.S.C. § 7541(i).  A longer 8 year, 80,000 mile warranty period applies for three specific components:  catalytic converters, the electronic emissions control unit, and vehicle on-board diagnostic (OBD) systems.

Matthew McKeown
February 7, 2007

- What does the Government mean by the phrase "entire applicable warranty period" in ¶ 10 of Appendix B of the Consent Decree? Is the phrase intended to apply on an emission-related component-by-emission-related component basis (i.e., where the applicable period may be as little as 2 years or as long as 8 years [or longer], depending upon the component)? Or, is the intent that the phrase extend the defect reporting obligation for the longest period that any individual emission-related component is subject to "warranty" coverage, whether for commercial or regulatory reasons?

- If the Government intends the phrase "entire applicable warranty period" to apply on an emission-related component-by-emission-related component basis, does the Government intend to imply by virtue of ¶ 10 of Appendix B that "nationwide warranty claims" need *not* be reviewed for the purpose of DaimlarChrysler's "existing" reporting obligations in the case of any components that may have an "applicable warranty period" that is less than the five year period specified in 40 C.F.R. § 85.1901?[12]

Once again, to avoid confusion concerning the interplay between DaimlerChrysler's "existing" reporting obligations and the new "enhanced" reporting obligations to be imposed by the Consent Decree, Afton Chemical recommends that the Government clearly explain how it intends the two parallel reporting obligations to apply with respect to the foregoing questions.

Afton Chemical appreciates the opportunity to provide these comments. If you have any questions concerning the comments, please contact the undersigned at (703) 761-6739 or via electronic communication at klflawoffice@cox.net.

Sincerely,

Kevin L. Fast, Esq.
Counsel to Afton Chemical Corporation

cc:    Donald Frankel

---

[12] Because the Consent Decree expressly limits review of nationwide warranty claims to the applicable warranty periods, DaimlerChrysler might plausibly conclude that it need not consider such warranty claims for purposes of its "existing" reporting obligations once the applicable warranty period has ended even if the "existing" reporting obligations extend beyond the applicable warranty period.

- 4 -

## APPENDIX B

# COMMENTS SUBMITTED BY RONALD HETTINGER

*Frankel, Donald J.*

# R O N A L D   K .   H E T T I N G E R

February 8, 2007

**Assistant Attorney General Wooldridge**
Environment and Natural Resources Division
P.O. Box 7611
U.S. Department of Justice
Washington, DC 20044-7611

**Re: United States v. Daimlerchrysler AG, D.J. Ref. 90-5-2-1-08769**

Dear Assistant Attorney General Wooldridge:

I own a 2000 Mercedes Benz ML-320, and recently had to have a faulty air mass sensor (AMS) replaced. I wasn't sure what an AMS even was, so I Googled it, and came across the Proposed Consent Degree (PCD) referenced above.

If I correctly understand the terms of the PCD, Daimlerchrysler AG agrees that there exist "(d)efects in mass the airflow sensor on certain 1998-2000 vehicles". If so, then it would seem to me that the PCD ought to also order Daimlerchrysler AG to repair at their cost the defect AMS in my car that just cost me almost $800. Indeed, all the defects listed ought to be repaired or replaced at Daimlerchrysler AG's expense.

My car has just over 80,000 miles, and I understand that emissions equipment in California are warranted only to 80,000 miles, but it seems to me that the federal government is in a position to order such action.

Thanks in advance for your help,

Best regards,

Ronald K. Hettinger

Cc:    **Donald Frankel**
       Trial Attorney, Environmental Enforcement Section
       Department of Justice
       Suite 616
       One Gateway Center, Newton, MA 02458

*Corr*
*90-5-2-1-08769*

4 2 3 9   A l t a   V i s t a   C o u r t ,   O c e a n s i d e ,   C a l i f o r n i a   9 2 0 5 7
7 6 0 - 9 6 7 - 6 6 1 3   •   r - h e t t i n g e r @ c o x . n e t
Page 1